**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-11402

Non-Argument Calendar

_____

DANNY LEO VALDIVIA-ALEMAN,
JENNIFER VALESKA REYES-JAENZ,
JAYDEN LEONARDO VALDIVIA-REYES,
JAYKOB OSDANNY VALDIVIA-REYES,

*Petitioners,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A220-220-435

_____

Before ROSENBAUM, GRANT, and WILSON, Circuit Judges.

PER CURIAM:

Danny Valdivia-Aleman petitions for review of the Board of Immigration Appeals' (BIA) order affirming the immigration judge's (IJ) denial of his claims for asylum, withholding of removal, and United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT) relief. After careful review, we deny his petition.

## I.

We review only "the [BIA]'s decision—not the immigration judge's decision—unless the [BIA] expressly adopted the immigration judge's opinion." *Clement v. U.S. Att'y Gen.*, 75 F.4th 1193, 1199 (11th Cir. 2023) (internal quotation marks omitted). When the BIA expressly agrees with the IJ's reasoning, we review the decisions of both the BIA and the IJ to the extent of the agreement. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). This scope of review "reflects the well-established administrative law principle that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.'" *Clement*, 75 F.4th at 1199 (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). Stated differently, we "do not consider issues that were not reached by the BIA." *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016), *abrogated in part on other grounds by Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

We review the BIA's factual findings for substantial evidence. *Murugan v. U.S. Att'y Gen.*, 10 F.4th 1185, 1192 (11th Cir. 2021). Credibility determinations are also reviewed under the substantial evidence test. *Hasan-Nayem v. U.S. Att'y Gen.*, 55 F.4th 831,

842 (11th Cir. 2022).  Under the substantial evidence standard, we "must affirm the BIA's factual findings so long as they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Murugan*, 10 F.4th at 1192 (quotation marks omitted).

## II.

First, Valdivia-Aleman argues that the IJ's adverse credibility finding, which the BIA affirmed, is unsupported by substantial evidence.  Valdivia-Aleman asserts that the BIA ignored the plausible explanations for the inconsistencies that the IJ based the adverse credibility determination on.

To establish eligibility for asylum, a non-citizen is "required to prove that he is a 'refugee.'" *Murugan*, 10 F.4th at 1192 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)).  "A refugee is a person who is 'unable or unwilling' to return to his home country 'because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'"[1]  *Id.* (8 U.S.C. § 1101(a)(42)(A)) (additions in original).

---

[1] To establish a well-founded fear of future persecution, a non-citizen "must show that he has a subjectively genuine and objectively reasonable fear of future persecution if returned to his home country." *Murugan v. U.S. Att'y Gen.*, 10 F.4th 1185, 1193 (11th Cir. 2021) (internal quotation marks omitted).

Importantly, "an immigration judge's denial of asylum relief can be supported solely by an adverse credibility determination, especially if the [noncitizen] fails to produce corroborating evidence." *Hasan-Nayem*, 55 F.4th at 843–44 (internal quotation marks omitted). When an IJ determines that an applicant lacks credibility, the IJ must offer "specific, cogent reasons for the finding." *Id.* at 844 (quotation marks omitted). In doing so, the IJ must consider the totality of the circumstances and all relevant factors.[2] *Id.*

Once the IJ explains his reasoning for an adverse credibility finding, "the burden shifts to the applicant to show that the adverse credibility determination was either not supported by specific, cogent reasons or not based on substantial evidence." *Id.* (internal quotation marks omitted). It makes no difference whether the identified inconsistencies, discrepancies, or omissions were "trivial

---

[2] The IJ must consider the

> responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (when-ever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

*Hasan-Nayem v. U.S. Att'y Gen.*, 55 F.4th 831, 844 (11th Cir. 2022) (quotation marks omitted).

or irrelevant to the dispositive issues." *Id.* (quotation marks omitted). "But even if the immigration judge finds an applicant not credible, the immigration judge still has a duty to consider other evidence produced by an asylum applicant." *Id.*

After holding a hearing where Valdivia-Aleman and his wife testified, the IJ denied Valdivia-Aleman's request for asylum, withholding of removal, and CAT relief. The IJ explained that there were thirteen distinct problems and inconsistencies with Valdivia-Aleman's and his wife's testimony and claims. Although the IJ's decision only includes numbers up to eleven, it was misnumbered showing two No. 4's and 5's. Some of those inconsistencies involve the same pieces of testimony and evidence, so for ease, this opinion combines those together into nine total. As a result, the inconsistencies include: (1) how many protests Valdivia-Aleman attended—he testified that he attended three (April 19, 2018, May 6, 2018, and June 6, 2018) but in a letter from another protestor, there was an additional protest not mentioned on April 21, 2018; (2) how many protests his wife attended (only May 6, 2018) but Valdivia-Aleman did not mention the protest on April 21, 2018; (3) whether Valdivia-Aleman's wife was not a member of the Political Council of the Blue and White National Unity (UNAB)—he said she wasn't but she testified that she was a member; (4) whether the UNAB was a national or local organization; (5) the new update from Valdivia-Aleman that his brother couldn't find a job because of Valdivia-Aleman; (6) when Valdivia-Aleman stopped working; (7) when the (Community Political Council) CPC would come to the house; (8) why Valdivia-Aleman and his wife left their house in Nicaragua

vacant; and (9) why Valdivia-Aleman did not provide any proof about the money they received bi-weekly from his wife's grand-mother.  The IJ also noted that Valdivia-Aleman had submitted two letters from the same protester, dated the same day, that had different language—one letter said that Valdivia-Aleman left Nicaragua because of the harassment but the other letter said Valdivia-Aleman had not left Nicaragua because of harassment.  The IJ also found Valdivia-Aleman's and his wife's testimony that the CPC and police would come to Valdivia-Aleman's house almost every other day every week for over three years for someone who participated in three antigovernment protests along with thousands of other Nicaraguans to be unbelievable.  The IJ found Valdivia-Aleman to not be credible and stated that his conclusion was "based on the totality of the circumstances and all relevant factors."  The IJ then determined that none of the corroborating evidence rehabilitated the testimony.

Valdivia-Aleman appealed to the BIA, but he only challenged certain credibility findings: the April 21, 2018 protest, his wife's membership in the UNAB, and how CPC affected Valdivia-Aleman's ability to go to work.  The BIA dismissed the petition, noting that the IJ's credibility finding was based on "specific and cogent reasons supported by the record," including inconsistencies between Valdivia-Aleman and his wife, inconsistencies between their testimonies and the record evidence, implausible testimony, omissions in the documentary evidence, and a discrepancy among the documentary evidence.

On appeal, Valdivia-Aleman challenges all thirteen findings by the IJ, arguing that none of them are supported by substantial evidence. The government argues that Valdivia-Aleman failed to exhaust his challenge to nine of those findings. The government is correct.

Although this requirement is not jurisdictional, "a noncitizen who seeks to challenge an order of removal in court must first exhaust certain administrative remedies." *Santos-Zacaria v. Garland*, 598 U.S. 411, 413 (2023). The statute's exhaustion requirement "precludes review of a claim that was not presented to the BIA." *Laguna Rivera v. U.S. Att'y Gen.*, 130 F.4th 915, 925 (11th Cir. 2025). To have exhausted his claim at the BIA, the claimant "must have argued the core issue now on appeal before the BIA, and although the exhaustion requirement does not mandate well-developed arguments and precise legal terminology, it requires the petitioner to provide information sufficient to enable the BIA to review and correct any errors below." *Id.* (internal quotation marks omitted). The requirement that a claim be raised at the BIA "is generally applied where it has been asserted by a party." *Id.* (citation modified). Because the government asserts the exhaustion requirement and Valdivia-Aleman failed to exhaust nine of those findings, we are precluded from reviewing them.

Turning to the exhausted IJ findings, we find that they are supported by substantial evidence. The IJ provided a comprehensive explanation of each reason why he found Valdivia-Aleman and his wife not credible. For example, the IJ explained how neither

Valdivia-Aleman nor his wife mentioned attending a protest in April 21, 2018, but a letter from a fellow protester—that Valdivia-Aleman entered into evidence—stated that he met Valdivia-Aleman and his wife at a protest on April 21, 2018. Additionally, Valdivia-Aleman and his wife testified that she attended only one protest, on May 6, 2018. The IJ recounted how Valdivia-Aleman testified that his wife was not a "member" of the UNAB and instead was merely a "supporter" even though Valdivia-Aleman had entered a letter into evidence saying the opposite. Then his wife testified that she was a member and not just a supporter, and despite knowing that his wife testified differently, Valdivia-Aleman's counsel did not call him back up to explain the inconsistency.

On appeal, to counter these inconsistencies, Valdivia-Aleman asserts some alternative explanations. But that does not mean that the IJ's findings and subsequent adverse credibility determination were not supported by substantial evidence. *See Hasan-Nayem*, 55 F.4th at 844. Valdivia-Aleman has to show that the evidence compels this court to find that the IJ's adverse credibility determination was erroneous, *Murugan*, 10 F.4th at 1192, but he has not done so. Instead, substantial evidence within in the record supports the IJ's lengthy and cogent explanation for finding Valdivia-Aleman and his wife not credible.

## III.

Second, Valdivia-Aleman argues that the IJ and BIA both erred by failing to consider his corroborating evidence after making

the adverse credibility determination.  The government again argues that Valdivia-Aleman failed to exhaust this argument to the BIA, so we should not review it.  Again, the government is correct.

Looking at Valdivia-Aleman's brief to the BIA, he only argued that the IJ's adverse credibility finding was clearly erroneous. He did not argue that the IJ failed to consider, or afforded insufficient weight, to any piece of evidence in the record.  Because Valdivia-Aleman failed to exhaust this argument below, and because the exhaustion requirement has been asserted by the government, we are precluded from reviewing this issue.[3]

## IV.

Finally, Valdivia-Aleman argues that the IJ and BIA erred by failing to consider his corroborative evidence about his CAT claim alone, separate from his asylum claim.

When an asylum applicant "could not convincingly establish a well-founded fear of persecution sufficient to show eligibility for asylum, he necessarily cannot show eligibility for withholding of removal or CAT protection." *Laguna Rivera*, 130 F.4th at 925; *see also Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1288 n.4 (11th Cir. 2005).

---

[3] Even if Valdivia-Aleman had exhausted that argument, he has not shown reversible error.  After finding that Valdivia-Aleman was not credible, the IJ noted his duty to address the corroborating evidence. *Hasan-Nayem*, 55 F.4th at 842.  He then identified why each piece of corroborating evidence failed to rehabilitate Valdivia-Aleman's unreliable testimony.  Valdivia-Aleman has failed to show reversible error.

Here, Valdivia-Aleman's argument about his CAT claim fails because it does not comport with our prior holdings that when an asylum applicant cannot demonstrate a well-founded fear of persecution, he necessarily cannot show eligibility for CAT protection. As we have explained, Valdivia-Aleman failed to establish his entitlement to asylum, and thus he necessarily failed to establish his entitlement to CAT relief.

**PETITION DENIED.**